ROBERT THOMAS REED, PLAINTIFF, v.
PEGGY RUTH REED, DEFENDANT;

ROBERT LASZLO, PLAINTIFF, v.
LYNN LASZLO, DEFENDANT.

JAMES ARTHUR WILSON, PLAINTIFF, v.
FUMIKA GUSHI WILSON, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided October 28, 1977.

Mr. *Alan Domers* for plaintiff Robert Thomas Reed (*Messrs. Farr, Reifsteck & Wolf,* attorneys).

Mr. *Clyde Walker* for defendant Peggy Ruth Reed (*Mr. David A. Keyko,* attorney).

Mr. *Frederick L. Bor* for plaintiff Robert Laszlo.

Mr. *William D. Dilks* for defendant Lynn Laszlo.

Mr. *Paul S. Slotkin* for plaintiff James Wilson.

Mr. *Ronald M. Block* for Camden County Welfare Board (*Ms. Mary Dugdale,* Chief Counsel, Camden County Welfare Board).

TALBOTT, J. C. C., Temporarily Assigned.

*Reed v. Reed, Laszlo v. Laszlo* and *Wilson v. Wilson* are divorce ·cases. In each case defendant wife is receiving Aid to Families with Dependent Children (AFDC) which is administered by the Camden County Welfare Board (Board). Also, in each case, as a condition to receiving AFDC benefits, the applicant was required to execute an Assignment of Support Rights (Form PA-10G) giving the Board the right to support received from any other source. Each plaintiff husband is under court order to make support payments for his wife and children. Arrearages currently exist in the payments required of Mr. Reed and Mr. Laszlo.

The Board moves to intervene in these divorce cases to assert a claim to the marital assets subject to equitable distribution, specifically, the marital homes. The motion was granted for .this limited purpose. Briefs were submitted and argument covering the various situations involved in these cases was heard. The single common issue is whether a demand for equitable distribution establishes the pendency of a payment under *N. J. S. A.* 44:10-4(a), thereby allowing the Board to require the execution of an Agreement to Repay by the AFDC recipient, entitling the Board to recover welfare paid from that date to the. date the funds are received.

Though the three cases are considered together, there are differences among them. In *Wilson v. Wilson,* defendant has not counterclaimed for equitable distribution and the Board has not requested her to execute the Agreement to Repay (Form PA-10) pursuant to *N. J. S. A.* 44:10-4. This is consistent with its position that it is the filing for equitable distribution which triggers the application of the recovery statute. Also, Mr. Wilson has offered to convey his interest in the marital home to Mrs. Wilson in order to insure that she and the children will have the security of living in the family home. Therefore, without a sale of the home, no funds will be available for distribution to the parties. In these circumstances it is the Board's position that the house is an exempt asset. Only if Mrs. Wilson sells the home in the future while she is still collecting welfare would the Board

assert an interest in the property. Then she would be required to execute an Agreement to Repay, obligating her to repay funds paid to her by the Board during the pendency of the sale, that is, from the time an agreement of sale is executed to the time of closing.

In *Laszlo v. Laszlo,* defendant counterclaimed for equitable distribution and the Board requested her to execute the Agreement to Repay. She refused to do so. Consequently, welfare benefits were terminated in accordance with *N. J.- S. A.* 44:10-4. If the marital home is sold only the arrearages owed by Mr. Laszlo can be claimed from the money received by him from his share of the net equity.

Defendant in *Reed v. Reed* also counterclaimed for equitable distribution. Accordingly, Mrs. Reed was asked to execute an Agreement to Repay. The Agreement was not executed promptly and the Board suspended all benefits. However, she subsequently executed the Agreement and benefits were reinstated, retroactive to the date of suspension.

The Social Security Act which created the AFDC program granted to the individual states the authority to provide for recovery of funds extended to AFDC recipients. Funds thus collected are divided between the federal, state and local governments in the same proportion each contributes to the original welfare payment. The purpose of recovery statutes is to reduce the cost of welfare programs by recovering sums previously paid and by deterring some potential recipients from seeking welfare benefits. There are three general arguments advanced in support of recovery programs. First, recovery statutes are said to encourage potential recipients to first seek employment or aid from friends and relatives rather than the state. Second, recovery statutes allow those in temporary need to avoid the immediate liquidation of assets as a condition of eligibility and to reduce the stigma of welfare by treating the money advanced as a loan. Third, such statutes are said to prevent unequal treatment of welfare recipients and the unjust enrichment of these recipients at the public's expense. Today recovery is largely a regional

issue, with the most stringent laws found in the Northeast. Baldus, "Welfare as a Loan: An Empirical Study of Public Assistance Payments in the United States", 25 *Stanford L. Rev.* 123 (1973). The constitutionality of the state's general power to enact recovery laws has been upheld. *Snell v. Wyman,* 281 *F. Supp.* 853 (S.D.N.Y., 1966), aff'd on motion 393 *U. S.* 323, 89 *S. Ct.* 553, 21 *L. Ed.* 2d 511 (1969).

New Jersey chose to exercise the authority granted to it by Congress and enacted *N. J. S. A.* 44:10-4 to provide for recovery of funds extended to AFDC recipients. The relevant section of this statute provides as follows:

Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare board may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted. Upon any refusal to make repayment in accordance with such promise, the county welfare board may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor. [*N. J. S. A.* 44:10-4(a)]

The Welfare Board argues that the demand for equitable distribution establishes the pendency of a "payment to * * * either or both * * * parents of funds arising from a claim or equitable interest legally or equitably owned * * * by either or both * * * parents." Thus, the Board maintains that it is authorized to require the execution of a written promise to repay and may take action to enforce that promise.

The repayment agreement which is used and which defendant signed was a standard form agreement provided by the Board. This particular one provided that, in exchange for the granting of welfare benefits, defendant would repay the Board for "that portion of any assistance so granted which may be paid during the period pending any receipt of certain

funds which are anticipated by virtue of a claim or other action against Robert Reed." The agreement then identified the claim as arising from the sale or distribution of the marital home or any other assets of the marital estate. The Board claims the wife must repay moneys paid to her on behalf of the children from the time of filing the claim for equitable distribution to the date the house is conveyed to another.

The problem with the Board's argument lies in its misconception of the nature of a demand for equitable distribution. A demand for equitable distribution does not necessarily result in the payment of funds to either spouse. Therefore, there is not at that time a "pendency of a payment to * * * either or both * * * parents * * *" *N. J. S. A.* 44:10–4(a) *supra.*

A review of the reported cases under *N. J. S. A.* 44:10-4 reveal that all involve personal injury claims of children receiving assistance under the AFDC program.

In *Essex Cty. Welfare Bd. v. Hellams,* 98 *N. J. Super.* 181 (*Cty. Ct.* 1967) aff'd 103 *N. J. Super.* 438 (App. Div. 1968), the trial court held that plaintiff Welfare Board was not entitled to repayment of welfare funds advanced for the support of the infant defendant out of a trust fund bank account representing the net proceeds of the settlement of a personal injury claim of the infant. Two reasons were advanced by the court for its holding. First, the Welfare Board had failed to obtain an execution of Agreement to Repay and the court concluded that the contract to repay was a prerequisite to any recovery under *N. J. S. A.* 44:10-4. Second, the court adopted the reasoning of the New York court in *Application of Woods,* 32 *Misc.* 2d. 745, 222 *N. Y. S.* 2d. 903 (Sup. Ct. 1961). In *Woods* it was held that considerations of public policy required that funds obtained by a child for his personal injuries should remain exempt from the recovery laws. The Appellate Division affirmed the decision of the trial court in *Hellams,* but solely on the ground

that the Welfare Board had failed to obtain the execution of the Agreement to Repay.

The reason for the limited affirmance in *Hellams* became clear in *Francis v. Harris,* 100 *N. J. Super.* 313 (*Law Div.* 1968) aff'd 103 *N. J. Super.* 440 (App. Div. 1968). In *Francis,* the court rejected the argument that funds recovered by a child for personal injuries were inviolate and could not be used to reimburse welfare agencies for assistance granted. The court held that a cause of action in tort for personal injuries was a claim owned by the child within the literal meaning of the statute, and since an Agreement to Repay had been executed, the Welfare Board was entitled to repayment of benefits advanced from the date the Agreement to Repay was executed to the date the funds were received.

In *Cumberland Cty. Welfare Bd. v. Rodriguez,* 144 *N. J. Super.* 365 (Law Div. 1976), the court dealt with three cases, consolidated for argument, which again involved judgments obtained by infants in tort actions for personal injuries. The court was presented with various arguments against the Welfare Board's claim to the funds created by the judgments in the tort cases. In the first case, due to circumstances surrounding the execution of the repayment agreement, the court could not determine that the agreement was valid. Since the execution of a valid repayment agreement is a prerequisite to any right of recovery by the Welfare Board, the court was compelled to deny the Welfare Board's claim to the funds generated by the tort claim. In the other two cases, the court held that repayment agreements could not, under the statute, be signed either in blank or for use in the future. The court also held that money awarded for a child's future medical expenses could not be reached for repayment of welfare benefits extended to the child.

It can be seen that these cases involve situations significantly different from the present case. A tort action is a claim against another party, and if successful necessarily results in a payment of funds to the injured party.

■ In a divorce case a spouse making a demand for equitable distribution has no claim against the other spouse (except possibly for support). Here, Mrs. Reed has no claim against Mr. Reed for the marital home. They own the house by the entireties. Each holds an interest in the property. Under *N. J. S. A.* 2A:34–23, each spouse has an interest in all property acquired during the marriage. *Painter v. Painter,* 65 *N. J.* 196 (1974). The demand for equitable distribution only requires a determination of the equitable portion to which each spouse is entitled in the marital property, and an allocation of these assets according to that determination.

Further, the equitable distribution of the marital assets does not necessarily result in a payment of funds to either spouse. Mr. Reed may convey the marital home to Mrs. Reed or it may be agreed that she remain in the house until the children are emancipated. In neither case would she receive any funds from the distribution of the home. It must be remembered that it is the pendency of a payment of *funds* to either parent which enables the Board to require the execution of the repayment agreement. The distribution of the marital home to either spouse is not the equivalent of a payment of funds to that spouse. The only time the pendency of a payment of funds would appear would be when the house was sold. When the contract of sale is signed, the Board then has a right to require the execution of the repayment agreement. Recovery would be allowed for benefits extended from the date the contract is signed to the date the funds are received.

The logic of this position is buttressed by the fact that in New Jersey, a house which is used as a home for the children by the AFDC recipient is considered an exempt asset. *Assistance Standards Handbook,* § 311.1 This means that any person, whether unmarried, widowed or divorced, can own a house but not have that house considered a resource in any determination of eligibility under the AFDC assistance program, as long as the house is used as a home for the re-

cipient and dependent children. It would make little sense to hold that asset exempt in a determination of eligibility, but available as a source of recovery when it is received through an order of equitable distribution.

It is also important to realize the differences which exist among the various recovery schemes enacted by the individual states. Generally, in states which have enacted recovery statutes, two methods of recovery are used. The first, often referred to as a "lien type" recovery, is accomplished through the process of securing a lien against the recipient's real and personal property. If the marital home is sold, repayment of all welfare money paid is obtained. If no sale is made during the recipient's lifetime, the lien is executed against the estate.

The second, or "claim type" recovery procedure, attempts to obtain payment during the recipient's lifetime from funds as they are received. Property often taken under this procedure include veteran's benefits, Social Security benefits, unemployment compensation benefits and personal injury awards. Repayment is usually limited to welfare benefits received for the period after the claim arose. *N. J. S. A.* 44: 10–4 clearly places New Jersey in this category. For example, if a suit is filed for personal injuries, not all welfare previously received must be repaid but only that received from the date of the aciedent, if an Agreement to Repay is signed, to the date the funds are paid. *Rodriguez, supra.*

The Board argues that the type of recovery statute enacted by a state is not controlling except as an indication of the individual state's policy toward the recapture of funds from its welfare recipients.

The Board then urges that this court adopt the holding of the Pennsylvania courts in *Public Welfare Dep't v. Snyder,* 45 *D. & C.* 2d 531 (*C. P.* 1968). In that case, Mr. and Mrs. Snyder were divorced in 1959 and Mr. Snyder was ordered to make support payments to the Department of Public Welfare, which was extending benefits to Mrs. Snyder and the children. In 1963 Mr. Snyder sold a house of which

he was the sole owner and the Department of Public Welfare successfully asserted a claim, not only to the arrearages in support payments which existed at the time, but to the total amount extended to the wife and children from 1957 to 1963, minus of course, the amount already paid as support.

There is a critical difference between *Snyder* and this case. That difference lies in the respective states' statutes which allow recovery. Pennsylvania is a "lien type" recovery state and its statute, 62 P. S. § 1974, allows the welfare department to create a lien against *all* the property, real and personal, of a recipient or a person charged with his support. As previously noted, New Jersey is a "claim type" recovery state and only allows recovery when a claim by the recipient against another party arises. Though the Board is correct in noting that the common goal of the two statutes is the recovery of AFDC payments, two very different recovery procedures are established and recovery can only be accomplished in accordance with the statutory procedure. Consequently, *Snyder* is inapposite to this case. Had New Jersey enacted a "lien type" statute, such a procedure would be proper and *Snyder* would provide persuasive authority for that decision. That is not the situation however. To permit the Board to secure a lien would be to ignore the statutorily prescribed procedure for recovery.

If the house is sold as a result of the order of distribution, it would, of course, lose its exempt status. Funds will be generated by the sale from which the Board can obtain recovery. The Board's entitlement to these funds would arise, however, not as a result of the claim for equitable distribution, but as a result of the sale. Only at the time of sale, would there be pending a "payment to . . . both parents of funds arising from a(n) . . . interest legally or equitably owned by . . . both parents" under the statute.

The Welfare Board also argues that a right of recovery, independent of *N. J. S. A.* 44:10–4, exists under *N. J. S. A.* 44:7–19. The Welfare Board maintains the position that the receipt of public funds by a person creates a legal debt

against the persons chargeable with the responsibility for that person's support and that this section of the statute authorizes the Welfare Board to bring an action on that debt.

■ Assuming, without deciding, that the Welfare Board is correct in this assessment, and that a separate action can be brought against both parents to recover welfare benefits which have been extended from funds received from the sale of the marital home, such action in no way depends upon either party filing a claim for divorce and equitable distribution. The proper method for raising this claim would be for the Board to bring a separate action, as it argues it is entitled to do.

■ The court holds that if the Reed marital home is sold and moneys distributed by way of equitable distribution, the Welfare Board is entitled to payment of arrearages, if any, from the husband's share of that distribution. It is further entitled under the Agreement to Repay signed by Mrs. Reed to all funds paid to her for the children from the date an agreement of sale is entered into until the date of conveyance. Such amount shall be paid from the net equity due to both parties before the moneys are divided, since support of the minor children is a joint responsibility of both parties. *N. J. S. A.* 2A:34–23; *Grotsky v. Grotsky,* 58 *N. J.* 354 (1971).